As counsel are coming up for the Nikon cases, I understand that counsel, since it's the same lawyers on both cases, that you intend to essentially argue them together. Is that correct? That's correct, Your Honor. Okay, that sounds helpful. So, good morning. Just a minute, let everybody get settled. Okay. Good morning, and may it please the Court, my name is Jim Dowd, and I represent the appellants, ASML U.S. and Global Foundries. I'd like to reserve two minutes for rebuttal. The question presented here is, what does Section 1782 require when identical copies of the same document exist both in a Dutch court's jurisdiction and in the United States? I have a factual question before we get there, because in the record is a declaration from Mr. Schuster, which said that ASML, this is obviously only on the first case, does not possess relevant documents. And it goes on to explain that all the documents are in the Netherlands, and in order to respond here, they'd have to, you know, send them and search them and all of that. And then in a later colloquy before court, I think there was a statement that, well, we're pretty sure there are virtually no documents that fall into this category of copies in the United States. So is there a real controversy here? I mean, is there actually a category of items that exist as copies here of documents there, or are they distinctly either here or there? Let me come to that directly. Your Honor, there is a controversy. There are documents that are both here and there. And if I can unpack that for a moment, what Mr. Schuster said in his declaration in paragraphs 8 and 9 is that for the components that are at issue in the underlying Dutch cases, there is no one in the United States who works on those components. Therefore, no one in the United States who has access to the documents about those components in the ordinary course of their work. That is and remains the case. And that, well, I'll come to it in a moment, but that goes to why this is a burdensome issue. Subsequently, I will come back to that. Subsequently, it was discovered that for disaster recovery purposes, for example, if there was a catastrophic fire at the Dutch facility, there is a server that the IT group maintains that has a mirror image copy of some of the work that's done in the Netherlands. So here it is literally bit for bit. It's the identical document. The documents themselves are all created in the first instance in the Netherlands about machines that are built. Okay, so you're saying it's not factually a null set, so we have to decide it. That's correct, Your Honor. Okay. And the true question is where you have literally the identical document within the jurisdiction of the Dutch court, so therefore within the power of the Dutch court to order produced. And an identical mirror image copy in the United States. Okay, so why has the district court abused its discretion in determining that the appropriate bright line is the United States borders? If a document is here, it doesn't matter if it's somewhere else. If it's here, produce it. If it's not, don't. Because that decision is contrary to the twin aims of 1782 as articulated in the Intel decision and also as discussed in the Schmitz decision from the Second Circuit that we've submitted. The twin aims of 1782 are first, to provide an efficient means of assistance to a foreign court with respect to documents that the foreign court can't obtain itself. And second, to encourage foreign courts by example, setting a good example, to provide similar assistance to our courts, basically a comedy concern. These principles limit the discretion of district courts in 1782 and are the basis for the four factors that the Supreme Court announced in Intel. I guess I'm trying to figure out why there is a limit. It seemed to me that in Intel, it was pretty clear that the Supreme Court was refusing to make any categorical rules. And instead said there are four factors that a court, and they said may, and I underlined that when I was reading it, take into account in exercising its discretion. And then after saying may, then it went through the four factors. But it seemed to me there, then the first what they were saying, the Supreme Court, was the district court thus has two discretionary decisions to make. Number one, what factors to use in making the decision, not even the four, because they may. And second, making the decision under the four. Now tell me why that says there's a limit. Because as the Schmitz Court explained in the Second Circuit. I am not, I mean, I don't believe the Second Circuit got it right. I'm looking at what the Supreme Court suggested. I'm saying that the Supreme Court, in reviewing what we had to do here, says we're not going to make any categorical rules. We're going to give you four factors you can take into account if you want to. But this is really a discretionary decision for the district court. Now that suggests to me that even if I don't like what the district court did, if it had the factors to take into account in making it, and it took them into account, even if not all of the four factors, I was to sustain it. Because, Your Honor, if I can address that, what Intel says is that the justification for Section 1782 discovery does not exist in the case where the foreign court has the documents within its judicial. I don't think it says it in as firm a way as you're describing. It seems to me that it gives, it still leaves room for district court discretion. And one aspect of that is how would the foreign courts view evidence obtained in this way? And as I understand it, all three of the foreign jurisdictions that are involved apparently would welcome this sort of evidence. And that would support the comity principle if you're looking at the purposes. Well, Your Honor is referring to the second Intel factor. Yes. And the second Intel factor essentially says, is this the doing of a useless act? Almost every court around the world would accept evidence. And so that's why we're going to do this. Well, there's specific evidence, expert evidence in this case that suggests that the courts would welcome this evidence. And you were starting by saying, well, you have to support the principles, and one of them is comity. So it seems to me if the foreign courts would be happy to receive it, then it serves comity to say what the district court said here. The question here is, first, are we providing any assistance at all? And that really is what the first Intel factor goes to. The first Intel factor looks to, is the evidence at issue here something that is already within the control of the foreign court? And if it is, what Intel says in that instance is that the need for 1782A aid is generally not as apparent. In other words, the underlying justification is not as apparent. Right. Well, that's one of the underlying justifications, and it's not as apparent, but it isn't a bright-line rule that says if documents are elsewhere, that's the end of the inquiry. There's nothing in Intel, to my way of reading it, that says that's the end and you don't look at the other factors and you have no discretion. We're not arguing for a bright-line rule, Your Honor. What we're arguing is that the courts below did not appropriately apply the law of Intel to these specific factors, to the specific facts of this case, because they did not recognize that the documents, the identical documents, are within the control of the foreign court. It seems to me that your total argument is that the district court misweighed the suggested factors. I have a tough time in understanding how one has misweighed the suggested factors and still has abused the discretion. If there was a bright-line rule under which I could suggest they didn't misweigh, they made a mistake, the bright-line rule says this is the way it is, then I can see where they might have abused their discretion. But if the total is just a misweighing, how is it an abuse? Because we're not arguing that it was a misweighing. It is a misapplication of the factors. And so, for example, Your Honor, if I can take you to the Kestrel case, which was decided by the Seventh Circuit. In that case, that is one of the few cases that we found where the facts are the same. In that case, there was a company, Joy Global, in the United States. It had a subsidiary in Australia named Joy as well. And the question was, where the same documents are at both companies, does 1782 allow production of those documents? And what the Seventh Circuit said there was it would be an abuse of discretion to order Joy Global in the United States to produce the documents because those documents are already within the judicial power. That sounds like a bright-line, and that seems to me to be a misreading of Intel. It is the correct application of the four Intel factors to the specific facts that we find in this case. Well, I guess when the standard is abuse of discretion, I really have difficulty with an argument that says, well, another court decided it a different way, because there are often situations in which either answer is permissible. Had the district court gone the other way in this case, I would have difficulty saying that was an abuse of discretion. But I'm not sure where that gets you. Well, if I can, the issue is that if we look, for example, to the Arizona court, and I'll focus for a moment on the first factor and the third factor. The first factor under Intel, the court said, if it's equally accessible in the Netherlands, this is in the first written decision, if it's equally accessible in the Netherlands, then it shouldn't be produced under 1782. Then the issue in the motion for clarification was, what do we do where it's in both places? And at that point, the court abandoned this idea that if it's equally accessible and said, well, I'm going to impose a bright-line rule that if it's within the United States, it has to be produced. But that undermines the principles, the twin aims of 1782, which are assistance to a foreign court. There's no – even on comedy. And that gets me to the third factor, which is setting a good example. It is not a good example to encourage a company like Nikon to evade entirely the Dutch procedural rules that govern discovery. Those are cited in our briefs. There is under Dutch civil procedure articles 1019A, and I believe it's 836A. And they set forth specific requirements for discovery. Although maybe isn't that exactly the point or that criteria of encouraging foreign countries by setting a good example to show how much you can learn when you have as broad a discovery as our rules permit? Well, in fact, the way that the Dutch court system is set up is quite different from the U.S. system, and its rules apply to the system that they've set up. And they have specific exclusionary requirements. So there is something called a legitimate interest test under those rules that has to be met before the discovery is granted. And if the discovery is allowed here in the United States of just documents in the United States, perhaps with that broader discovery we can show the court in the other country how much one can actually learn when one has broader discovery, and maybe they should follow our broader discovery approach. Isn't that part of the intel factor? Your Honor, I'd submit that that's not the correct analysis, because if you actually look at it from an inverted position where it's the U.S. court, it would be like saying there is a privilege against discovery in the United States. Let's encourage a party to go to a country that does not recognize that privilege to get the documents and publish them, so that then once they're published they can be— But there's no claim of privilege here. This is all about burdensome and—I mean, if there's a claim of privilege, that's not before us, right? Well, the argument below from Nikon was we could not obtain— if we had to meet the standard in the Netherlands, we couldn't obtain these documents. That's not my question. Is there a claim of privilege? It's not a claim of attorney-client privilege, Your Honor. And on burden, you mentioned very early on in your arguments that there was some burdensomeness to gathering the documents that are in the United States. Can you tell me what specific evidence is in the record that was presented to the district court that would support a finding of burdensomeness? Yes. There are three issues there, Your Honor. The first is if you look to cases like the Creek case, which is analogous here, part of the burden is, and this is also in the Horaeus case from the Seventh Circuit, part of the burden is the mere fact that we now have three cases that ASML and its customer global foundries are involved in, when the documents themselves are actually in the Netherlands. But is there any specific evidence in the record here before the district court— Yes. —that it would be particularly time-consuming and or expensive and or difficult, hence burdensome, to do this search? There is. And those three points are, first, it would be that ASML in the U.S. —and this I'm pointing to the Schuster Declaration, paragraphs 8 and 9— ASML in the U.S. doesn't have the ability to understand what documents are responsive. It would have to go back to the Dutch engineers and scientists who build the accused products, have them try to figure out what's responsive, have those documents identified back to the United States to be produced in the United States, only to get shipped right back to the Netherlands. That's one. The second is that if you look to the Creek case, and if you look to, for example, Judge Posner's decision out of the Seventh Circuit in Jerez, he says that exact circumstance would be an abuse. And it would be. And then the third issue is that in the correct course, this would have been dealt with in the case in the jurisdiction that Nikon chose to bring as its merits court in the Netherlands. Now we've had two additional cases. We've had this case for ASML U.S. and the Global Foundries case that have increased the burdensomeness of. So the only burden that I'm really hearing with any specificity is there's nobody in the U.S. that can figure out what's responsive. We'll have to ask a Dutch engineer. Well, it is also all of the time and effort and distraction of the folks who are here in the United States doing different work that they now cannot do. And that's my question. How much is that? Because I've heard a lot of discovery disputes. Sometimes there's a lot of time and effort that's involved. Other times there's not. What evidence do we have in here, in this record, that there's a lot of time and effort that will be involved and required? It is. There are at least two things, Your Honor. One is Nikon's own statement that the machines that are at issue here are some of the most complex machines in the world. That is literally true. That doesn't mean it's hard to find the documents relating to them. Well, Nikon has posed 80-odd subparts to its requests that call literally for every component within the machine, whether they're accused or not. And we have a server sitting in Connecticut that has at least some amount of material relating to that that the people in Connecticut don't have any idea about. Am I correct that there's no evidence in the record that would in any way estimate the quantity of responsive documents or the person power or hours required to gather and then review those? Or the efficacy of having that done initially by a computer, by inserting keywords that could pull those documents to the forefront? We don't have any evidence of that, do we? We don't have evidence on the dollar amount or hours or the efficacy of a computerized search. But what we do have is that the people who know where the documents are and who understand the structure in which they're maintained are all Dutch people. And so in the first instance, those folks would have to be consulted to figure out where to even look. And that is inefficient. That should be controlled under the Dutch procedures. Since we've glommed together two cases, we've given you some extra time. Is there anything initially that you want to say about the other case before we hear from Mr. Palmore? Sure. I do want to — I would briefly address the standard of review issue, which is unique to the California case. Right. And on the California — on that case, that's an additional reason that the decision below should be reversed, because the standard that was applied by the district court judge, Judge Freeman, was incorrect when reviewing the magistrate judge, magistrate — Because it's dispositive under the reasoning of Flam. Correct, Your Honor. Okay. And supposing it isn't? Supposing Flam is not to the contrary, that this is not dispositive, then the decision is correct? I believe, Your Honor, it is binary. Either it was dispositive or it wasn't. Well, if it's not dispository, then what happened in the court was fine. If we've got to determine that this was a dispositive situation, which confronted the magistrate, right? You have to — I believe I agree with Your Honor. You have to determine that what the magistrate did was final and dispositive as to global foundries. Well, as to the claim. As to global foundries, where the only claim against global foundries. I understand. What do you do with four pillars? I don't think four pillars is to the contrary, because — In four pillars, we reviewed the magistrate's decision there for an abuse of discretion. The magistrate in four pillars was really, if you will, looking at a district and functioning as a district court decision. It had been reviewed thereafter by clear error by the district court, and we went right to the magistrate's decision and reviewed it for abuse of discretion. In four pillars, I don't believe this issue was presented. I don't believe there was a challenge that said it should have been a de novo review. Well, it doesn't matter whether it was challenged. It matters I look there to try to find what we do, because, frankly, discovery disputes are not the ordinary disputes. You've either got to come down that if you're going to go to another court and ask for discovery, the fact that that court makes that decision makes it final and dispository, or if you go to that other court and look for discovery, and they make a decision, but it really doesn't have anything to do with the disposition as to the real claims or what really happens. All we're trying to do is just get the discovery done. You've got to determine whether that's dispositive or nondispositive. But, Your Honor — And we do that every day, and we say they're nondispositive. But, Your Honor, the difference here is that Global Foundries, as Nikon points out, isn't involved in the underlying merits dispute. The only question for Global Foundries is the question that the magistrate judge decided, which is, is Global Foundries going to be ordered to produce or not? And here, the correct analysis case — So the fact — so what you're really arguing, the fact that they are a party to discovery in another dispute, the fact that you take that dispute into another tribunal to decide whether they're to produce or not makes that a final decision. I'm applying the functional test of flam, and I'm saying — I am, too. Is there any other question that the case that was against Global Foundries presented? It does not. But does this dispose of any claim? Does it dispose of any defense? No. What it's dispository of is the discovery dispute. It's dispositive of the only issue that is presented by that particular case against Global Foundries. There is nothing else to be decided as to Global Foundries. And the premises — So I understand your argument. It is — the entire case number is over, regardless of what — how we label it. That's a part of the argument, Your Honor. And it also — if I can take your — the court to the premises case, in that case, the logic was that the magistrate judge decided the 1782 — or, I'm sorry, a decision of the 1782 issue is final and therefore appealable. That gets it — the difference in standard is what gets it the difference between Article III and Article I. All right? If it's an Article III judge making the decision, it's appealable and final, and that's fine. But if it's an Article I judge who's made that decision and then it's being objected to in front of the district judge, then because it is final, because it is dispositive as to Global Foundries in this case, then you are under 28 U.S.C. 636b1b and Federal Rule 72b3. Although 28 U.S.C. Section 636 by itself doesn't speak of claims or defenses, right? For that, you need to go to Rule 72 for the distinction between dispositive and nondispositive. All right. Rule 72 teaches us and tells us that for something to be dispositive, it has to be dispositive of a claim or defense. And what I'm hearing my colleagues say, and I'm not hearing a response from you, is that if it doesn't dispose of a claim or defense, then under Rule 72 it can't be dispositive. But it does as to Global Foundries, because the only claim against Global Foundries is produced discovery. So is that a claim and a defense? So you're saying that's a claim. What's the definition of a claim in that context? It's definitely a request for discovery or a demand for discovery. What definition of claim are you using and what's your source for you to say that that's a claim? The definition I'm using is what is the relief that is being requested against the party that you've brought? Is there a case that would suggest that's a claim? You've stolen my question. I didn't find one. I didn't find it as a claim. I didn't even find it as a defense. And therefore, I worried about your argument under Rule 72. I don't believe that at least we have found a case that resolves this issue in the Ninth Circuit. And so — I don't find one that resolves it other places. See, if we're trying to interpret Rule 72 of the Federal Rules of Civil Procedure, we look to how the words claim and defense are used in the Federal Rules of Civil Procedure, and the only way that I've seen it there is as a claim for relief or for a claim upon which relief can be granted. And here, and I believe this is testing my memory, but I believe that's Rule 4. And here, the only claim that is brought against Global Foundry, the only relief sought from Global Foundries, is the discovery under 1782. And the magistrate decides that. So for purposes of this statute, that is a claim, is what you're saying. That is my argument. Because it seeks relief by virtue of an order from the Federal court. That is my argument. Now, I'm sorry. Go ahead. How would you deal then with, say, a normal, let's keep it all in the United States, a Rule 45, subpoena to a third party in another jurisdiction? We've got my case in Oregon. Somebody in my case wants to subpoena a third party in Idaho, and there's an objection there. It has to be resolved under Rule 45. We now know you go to the court where the subpoena recipient is. That's in Idaho. And that's assigned to a magistrate. Magistrate makes a decision. Someone objects to the district court. District court needs to know, is that a dispositive or nondispositive matter? It doesn't dispose of the underlying case, but it does dispose of the only thing that is now in Idaho. Is it dispositive or nondispositive? The difference is that the subpoena in that case issues out of the underlying case. It's all one case where the claims in that case, the merits-based part of that case, is in front of the same judge. Now, you resolve it in Idaho, but the subpoena is coming from that same case. Oh, in that case, it wouldn't be dispositive? In that case, for that reason, it wouldn't dispose of the main case. Just because the subpoena came out of the Oregon court? Well, 1782 is a different animal. Well, I understand, but 1782 is trying to do the same thing that we're talking about as it relates to the subpoena. We're talking about as it relates to discovery between the states. And that's why I said in those issues, in those cases, we don't treat those as dispositive at all. But respectfully, Your Honor, the standard that is required to get discovery under 1782 is quite different than the standard that is required under Rule 45. Because then there's a different standard for the discovery you can get. It changes whether it's dispositive or not? No, it's that it changes whether it's dispositive or not because the only case here in the United States is the case about whether 1782 should be granted or not. The only case that there is for Idaho subpoena, the only case there is for an Oregon, if you will, motion to compel the person to come to the discovery deposition is in that jurisdiction. It's not in any other jurisdiction. But the underlying case, I believe you posed that it would be in Oregon. The underlying case in Oregon from which the subpoena issues remains a case about the full merits of the claim. And here the order exists apart from the foreign proceeding. It has to. It doesn't come from the Dutch court. It comes from this court. That's correct. 1782 originates because a claim is filed in California. I want to ask you another question about the second case. Assume for the sake of this question that you are not successful on the dispositive motion issue. Are there differences on the merits between the two cases that you would like us to take into account? I believe, Your Honor, with respect to the analysis under the intel factors, in the California case, well, there are two things. One is we saw from Judge Freeman's opinion that she would weigh things potentially differently. She said reasonable minds would differ on how to weigh. That's why we think a de novo review is in part important. But if you look to the magistrate judge's order, Magistrate Judge Van Kulken said simply, if it's in the United States, you have to produce it. And that is not a faithful application of the intel factors. I think that the arguments for why run in parallel with the arguments for why Judge Tucci erred below as well. But I think it is a more extreme example of the problem. So the difference, if I understand your argument correctly, the main difference, if we look at the magistrate judge's order, is that it is not explained in a way that is full and responsive to intel, but that otherwise they're similar arguments that you've been making. It is that in the California case, the rule that the magistrate judge applied is essentially a bright line rule that says if documents exist in the United States, they must be produced. And that is inconsistent with both the twin aims of 1782 and intel's articulation that if the documents are also in the foreign jurisdiction, in that case, the justification behind 1782 is diminished. We also need to look to what happened in terms of avoiding the foreign court's own proof gathering processes. And then we also have to look to the burden issues. And in some senses, because Global Foundries is a true third party, and Nikon's argument is only we want whatever documents you obtain from ASMLNV, the Dutch entity, that's what they're after. They think that a customer has documents that it obtained from the party to the Dutch case. The burden issues are more substantial for, and in fact, all of the factors are more substantial. I don't follow that. I don't follow that. It can't be that hard, I think, to say give us all documents you got from the Dutch company. You either know where they are and you produce them or you don't have them. But that's more akin to federal rule, I believe it's 26. I agree with the concept that discovery from a third party, prima facie, is more burdensome than a discovery from a party. I get that. Yeah. But here, if all that you're asking Global Foundries for is give us a copy of what you got from the Dutch company, that doesn't sound very burdensome from a third party or anybody else. Am I mistaken? In terms of the volume, in terms of, it really comes down to the same evidence is available more efficiently directly from a party. Stay with burden, though, because there's going to be no attorney-client privilege if you got them from a third party. So, you look for the documents you got from this third party. You then produce them. Where's the burden? But it is disruptive to the engineers and the folks who are working at Global Foundries to have to go out and figure out, okay, what do we have from ASML and V that would be these specific components that are at issue in the foreign case? And there's no evidence in the record, if I understand it correctly, that says that that's more than, you know, one hour or X hours. We have no evidence at all that says, how burdensome would it be to go look for it? If the court, I guess if we affirm, and you actually have to, and Global Foundries actually has to go look, we have no evidence of whether that's a 30-minute search or a 30-hour search or a 30-day search, do we? I think on the Global Foundries side, the evidence is less powerful, candidly. I think on the ASML side, it's more powerful because what you have there is, if you step back to what are the actual accused products, they are machines that are kind of, they would fill this room. They are the size of a tractor-trailer truck, or the trailer part anyway. They are described by Nikon as the most complicated machines in the world, and they are. They are machines that cost upwards of $35 million to purchase, and they are, because of that complexity, there are thousands of engineers in the Netherlands who work on those machines and have figured out how to make them work. There are, I believe, somewhere on the order of a dozen to 19 different machines at issue, and all of the documents for those machines originate from the Netherlands and the people who understand what those are are in the Netherlands. Yeah, I think we understand your position on that, because you've talked about that earlier, and you're over your time for the two cases combined, so we will give you some rebuttal time, but for now, we'll hear from the other counsel. Thank you, Your Honor. Thank you, Your Honor, and may it please the Court. I'm Joseph Palmore here on behalf of Nikon. Both district courts acted well within their broad discretion in ordering discovery under Section 1782. Both courts considered the intel factors, and both courts carefully tailored their orders to reduce the burden on ASML-US and global foundries. No court of appeals has ever found an abuse of discretion under circumstances even remotely like these. And indeed, this Court's most recent published decision on 1782, which is Acabia v. Fibrogen, found no abuse of discretion under materially identical circumstances. If anything, the case for the petitions here was stronger than it was in Acabia, and I'd like to talk about that in a moment. ASML's central argument is that there is a bright-line rule. I think I heard Mr. Dowd disclaim that he was saying that there is a categorical prohibition, but if you look at page 25 through 26 of his reply brief, it's stated there. They say, When the court that would receive the evidence requested under Section 1782 can itself order the same discovery, that court and only that court, that's in bold in ITAL, should decide what discovery is appropriate. That is the rule. Well, that certainly is the first factor to consider, and they're certainly correct that all of the documents that exist in the Netherlands can be ordered, discovered by the court there. Your Honor, there are a couple of there are a variety of problems with their position, legal and factual, as applied to this case. As a legal matter, any categorical rule is inconsistent with ITAL. I'm not arguing about that with you. What I'm saying is that that is the first intel factor. Whether the party. Right. And it seems to me they're surely correct about that factor. I respectfully disagree, Judge Graber. Why? Because we have not, we are seeking documents from non-parties. ASML U.S. is not a party. Global Foundries is not a party. We are seeking documents from U.S. entities. We are seeking documents that are in the U.S. And these are not parties to the foreign proceedings. And it's so, wait a minute, wait a minute. Does that mean that the Dutch court has no jurisdiction to order these documents produced? The Dutch court, and I don't think they've ever argued that the Dutch court could order production from these U.S. entities. No, no, that's not my question. The documents in the U.S., as I understand it, are copies of the documents in the Netherlands. With respect to the documents in the Netherlands, can the court there order discovery of the documents there that are identical copies here? Your Honor, I'd like to dispute the premise, and I'll come to that in a moment. It's not all the same documents. But taking your question, the Dutch system is very different. It's a civil law jurisdiction. So, yes, in some sense, the documents that are there are theoretically within the jurisdiction of that court. But Intel talks about this. This is why we have Section 1782. Civil law jurisdictions don't have discovery systems like ours. The fact that this foreign tribunal doesn't have an American-style discovery system does not make use of 1782 circumvention. The Second Circus decision in Mies is instructive on this point. Circumvention means something very specific in this context. That means if there is something like a privilege or if the foreign tribunal sends a letter or files an amicus brief saying, don't provide discovery, this is going to interfere with our processes, Schmitt, which Mr. Dowd mentioned. In that case, the German antitrust authority sent a letter to the district court and said, you are going to interfere with an ongoing criminal investigation if you order discovery of these documents. And that was circumvention. Here, we don't have anything even remotely like this. To the contrary, we have unrebutted evidence that all three tribunals will gladly accept this material. Well, I think that goes to the second factor. If we go back to the first factor, I agree with you that they're not parties before the tribunal. But it seems to me that what they're really arguing is they're saying we're not party before the tribunal, but are they a non-party over whom the tribunal has control? Perhaps that is what they're saying, or they're saying, does that tribunal have some way of getting the documents? I mean, my view of what their argument is, we're not a party, but we are a non-party over which they have control, and therefore, you can get all that in the foreign tribunal. Well, that's certainly not true as to global foundries. There's no corporate privity between global foundries and ASML and V. Second, that was the same argument that the respondent in Acabia made. They said you don't need to provide. In that case, the respondent there was actually a party and said it was an abuse of discretion to order discovery from me because I'm a party in the European proceedings and they can get the documents if they want. And this Court said there was no abuse of discretion, and it was a deferential review, as is appropriate of a discovery order. What the Court said in Acabia is the district court considered the factors. It didn't even expressly consider all of them, but it considered most of them. They're non-exclusive, and it was a reasonable determination. And that's what we have here. I would also go to the facts of Intel itself. In Intel itself, Intel was a party. It was being investigated by the European antitrust authorities. It had actually, AMD, because AMD had filed a complaint, AMD had asked the European antitrust authorities to order production of the very same documents, and the European antitrust authorities had said, no, we're not going to do that right now. But they could have. They had power. If that was dispositive, if the European antitrust authorities' control over the documents were dispositive, the Intel opinion would have looked very different and it would have been much shorter because the Supreme Court would have relied exclusively on that. But it didn't. It didn't find that dispositive. Instead, it laid out a series of non-exclusive factors. Even putting that aside and even accepting as true some kind of rule like this, contrary to Intel and contrary to Acabia, the argument completely ignores the fact that there are three jurisdictions with pending cases. It's not just the Netherlands. We have proceedings in Germany and in Japan. There is no argument, much less evidence, that any of these documents are within the jurisdiction or control of the tribunals in Germany or Japan. And there's no support for the idea that a 1782 petition must be denied and that it's an abuse of discretion to grant it when the party could go to some third country and theoretically get the documents. That's not the way that Section 1782 works.  Because I think I heard Appellant's counsel say that all of the documents that Nikon seeks from ASNL-US is just a mirror image of what the Netherlands company has in the Netherlands. Does Nikon agree with that? That is not correct, Your Honor. Well, first of all, did I hear that correctly from Appellant's counsel? I believe you did hear that correctly, and that is not correct. The best evidence of what we're seeking is the document requests themselves. Those are at ER 400 to 414 for ASNL. They're in no way limited to ASNL-NV documents. We're asking for manuals, guides. What ASNL-US does is it installs, maintains, and repairs these very machines. And there is evidence in the record here of job postings for engineers. They're looking for expert customer service engineers who do that maintenance work. And they undoubtedly have documents that they use in their day-to-day work, maintaining, as counsel said, these highly complex, very expensive machines. We also cite the fact that they write reports. So this idea that they're completely coextensive is incorrect. With respect to Global Foundries as well, Global Foundries is operating these machines. Many of the documents would be easy to find because there are things like manuals, guides, photographs. But they may have other documents as well that they have created in their own day-to-day operation of these machines. For instance, we've asked for maintenance records. That's in the record here. Those obviously didn't come from ASNL-NV. So this idea that we're only duplicatively seeking documents that are in the Netherlands is not correct. Now, will there be some overlap? Of course. I'm looking puzzled because it seemed to me there were initially three categories of documents. There were things that were found in the United States that are either unique to here, like the maintenance records, or presumptively uniquely in the United States. There were documents that exist only in the Netherlands. And there was this category of overlap. And I thought we were arguing only about the overlap. That is, and Mr. Dowd can correct me, but I didn't think that there was an argument that it was improper to order discovery of the documents that exist solely within the United States. So, I mean, what you say is correct. I think there were three categories, but I thought we were only arguing about the middle category. But I may be wrong. Well, Mr. Dowd can clarify what his position is. If you look at the conclusion paragraph of his blue brief, he says the order should be reversed and the petitions should be denied in their entirety. Those are his words. So I don't know what his position is with respect to uniquely native documents. But that, of course, isn't the line. The district court in Arizona drew a sensible line between, and he said this was a partial win for ASNL. We had asked for more. We only got documents that were in the custody or control of ASNL U.S. in the United States. That was the line that the district court drew in its reasonable line drawing discretion. And in global foundries, again, we were seeking, again, documents from a U.S. entity that are in the U.S. Mr. Well, maybe you have more. It looks like he only has four. You didn't have any more? No, I didn't. Okay. The third factor, is this an attempt to circumvent the foreign proof-gathering restrictions? It seems to me the argument of your opposition is that's exactly what this is, that Nikon chose, if you will, a fast-track procedural mechanism that, based on their choice, they find themselves now in problems that they can't deal with, and so they're trying to avoid the limitations of the Dutch system. Yeah, and that's incorrect, Your Honor, for a couple reasons. I appreciate that, but I need you to talk to me about that. Sure. First of all, again, going back to the Second Circus decision in Mies, circumvention means something very different and specific here. It means circumventing a specific policy or rule, kind of like a privilege, or if there's an amicus brief or a letter saying don't provide it. We don't have that here. In fact, we have uncontested evidence that the material would be welcome. On the Dutch procedure in general, under that procedure, as our expert lays out and their expert doesn't dispute, we filed our complaint and we had to file evidence to basically show we had a prima facie case, that we had some support for what we were alleging. Part of the fast-track procedural. Yes, but the Dutch proceedings allow for the introduction of later evidence, and there's no suggestion here that the Dutch tribunal wouldn't accept this evidence. And this whole fast-track argument also ignores the German deadline, which is actually earlier than the Dutch deadline, and there's no fast-track argument there with respect to Germany, and we also have the proceedings in Japan. Mr. Dowd has mentioned the Horaeus case from the Seventh Circuit repeatedly in his brief, and again here today. The Horaeus case, it's critical to understand, found an abuse of discretion in the denial of a 1782 petition. And again, the respondent there was actually a party to the foreign proceeding, so was within the jurisdiction of the foreign tribunal, and what the Seventh Circuit said, that was a case involving litigation proceeding in Germany, what the Seventh Circuit said was it was an abuse of discretion for the district court to deny that petition, despite the fact that it was a party, because there are limitations on discovery in Germany, and there's really no practical way this party could get that material in Germany. So far from being circumvention, the Seventh Circuit and Horaeus, which is I think the most cited case in Mr. Dowd's brief, held that those limitations on the kind of positive authorization to provide discovery were a factor in favor of allowing discovery in this case. But that would apply only to your U.S.-only documents, right? It wouldn't apply to documents that are held in both the U.S. and the Netherlands. Am I correct? I think it would apply to both, Your Honor. But of course, I don't have to convince anyone that there was an abuse of discretion, which was the barrier that had to be surmounted in Horaeus, because here both district courts found the same thing. And abuse of discretion means that no reasonable jurist could come to the same determination. When you actually have two addressing pretty much the same issue simultaneously or virtually simultaneously come to the same determination, it's very hard to – I want to ask you about global foundries and the question whether the ruling is dispositive or not. To take your argument that it is not dispositive would mean that in every discovery dispute under this statute, there would never be a dispositive ruling that would have to be reviewed by an Article III judge de novo. Because if this isn't dispositive, what is? There is nothing else to be done. There is the application which seeks relief. That is, we want discovery. And at the end, it's either granted or denied. And the case goes away. There is nothing else. So I'm disturbed by that. And I don't understand why for purposes of dispositiveness, if you will – I'm not sure that's a word, but this doesn't count as a claim for relief. That is, I demand discovery, and I either get a yes or a no answer, and why we wouldn't extend FLAM to that situation. Your Honor, I acknowledge that it's, of course, an unusual situation. It's an unusual statute. But it is at bottom a discovery statute. And magistrates decide discovery questions every day, often more than once a day. But not such sensitive ones where Congress and the Supreme Court have told us that this is really a matter of comedy with foreign nations and, you know, other values that are considerably different, it seems to me, than the ordinary discovery dispute about whether, you know, there are similarly situated employees whose personnel records we ought to be able to look at. Well, Your Honor, it's truly, of course, it presents important issues. But at bottom, it's a discovery statute, and it's one that the Supreme Court has said is to be construed liberally in favor of discovery. And I think the key question under FLAM is the connection to the merits. And Rule 72, as the Court had reflected in its questioning, talks about dispositive as to a claim or defense. And those are two sides of the same coin, a claim like that would be a claim for relief and a complaint, a defense that would be an answer. Well, there is a claim. This is a freestanding thing, this proceeding. And there is a claim in the sense of we demand relief. We want something. You came to court because you wanted something. And the something you wanted was discovery. And you either get it or you don't. But the entire case number goes away when this is over. And I have difficulty seeing why that doesn't count as a claim for this purpose in this very, very unusual, in fact, probably unique sort of situation. Well, Your Honor, because the claims and defenses are being adjudicated somewhere else. So it really is the same. So really, though, you're saying that we never will require an Article III judge, unless it goes up to us, to consider this question, even though it's incredibly important. We just sort of have maybe supervisory authority by the Article III judge. And if there's clear error by the magistrate judge, that's good enough. Well, Your Honor, third-party discovery can also be important and implicate sensitive issues, and those are nondispositive. The Eleventh Circuit has squarely held that these 1782 decisions are nondispositive. Every district court in this circuit applying this court's decision in Flam has held that these decisions are nondispositive. Well, why am I thinking that if Nikon would have asked the magistrate for this discovery and the magistrate would have said no, applying these factors and the intel factors, that we would have then seen Nikon argue to the district court, well, that was a dispositive motion because now we have no chance of getting anything. You should review it de novo. I mean, no disrespect, of course, but I can envision that. Well, one can perhaps obviously always hypothesize counterfactuals, but that's, of course, not where we are here. Well, the next time, though. And if we hadn't been making that argument, we would have been running against the tide of every single district court in this circuit who's decided it. Applying Flam, we would have been asking this court to create a circuit conflict with the Eleventh Circuit. That position also would have been inconsistent with this, what this court did in Four Pillars, as the, as Your Honor suggested. Four Pillars, I think, is ambiguously written. To me, at least, it isn't clear under what standard the district court acted in responding to a request to review the magistrate judge's order. I think you can, at least I can sort of read it both ways. I don't think it's entirely clear what the district court did, and it certainly was not brought up as an issue on appeal one way or the other. That is correct, but the district court denied reconsideration, which is the language used for a nondispositive order. But more importantly, this court reviewed the magistrate's order for abuse of discretion, which is only consistent with the view that it was nondispositive. If the court doesn't have any other questions on the magistrate issue, I would just like to ask. But that would be, that would actually be true even in, under de novo review. We sometimes see a district court that says simply, I've carefully reviewed this de novo and studied the entire record, and I agree with the magistrate judge. And then we look at what the magistrate judge did. So I'm not sure that proves that we assumed it was nondispositive. But even if we assumed it, we didn't decide it. Well, Your Honor, it's possible to come up with possibilities of different ways that things could have unfolded in the lower courts in four pillars. The fact is, though, that the court did interpret it, did apply an abuse of discretion decision standard to the magistrate's order. And district courts around this circuit, looking at that, not just that, but also looking at FLAM and the functional approach, have consistently held that these orders are nondispositive, like other discovery disputes, like third-party subpoena disputes. And that's the consensus of the courts nationwide on this issue. But just to close, again, with this Court's decision in Acabia, which I think really is dispositive here. The respondent in Acabia, who was a party to the foreign proceeding, made the very same arguments that Mr. Dowd is making here today and said, if you want these documents, you should get them abroad. They have jurisdiction. You're going to open the floodgates to the U.S. if you grant discovery here. And this Court, applying correctly the abuse of discretion standard, rejected that argument and said, no, the courts here, the district court here, looked at the intel factors, didn't expressly actually address the first one, but looked at most of them and came to a reasonable determination. And that is the – that really dictates the result here. If anything, the case for the petitions here is stronger because we sought the discovery only from non-parties, and we have the three different countries that are looking at this. This is a global, multijurisdictional litigation, and it's the – and there are relevant documents from U.S. entities in the United States. This is a heartland case for Section 1782. Well, may I ask if – just to make sure I understand this correctly. If the decision by the magistrate was on a dispositive motion, then the district court should have reviewed it de novo, right? And if someone then wanted to appeal what the district court decided on that discovery dispute, would the Ninth Circuit panel then have to review that discovery dispute de novo? No, Your Honor. I think the abuse of discretion standard would then apply to the district court's decision. Okay. If the court has no other questions, we would ask that the court affirm. We also appreciate the dramatic expedition that the court imposed here with respect to briefing and argument, and I don't want to be presumptuous, but if the court is going to affirm, we would ask that the – We'll be quick either way. And we'd ask that the stay – we would ask that the stay be lifted perhaps even in advance of the decision because these deadlines are coming. Thank you. Thank you, counsel. We'll give you three minutes for rebuttal. Thank you, Your Honor. I'm going to start with that last question. Do you agree that if it is a dispositive motion, then the district court should have reviewed the magistrate's decision on global foundries de novo? And do you agree then that it would still be a question of abuse of discretion at the Ninth Circuit? Because when you have de novo decisions, like on summary judgment, those are reviewed de novo on the appellate court, aren't they? I agree, but I would note that it's not harmless because what Judge Freeman said was reasonable minds could differ on the outcome of the facts that were presented there, which is an indication that she would have come out differently. De novo in this context reflects the sort of balance of power between Article I and Article III rather than a sort of standard substantive question like whether summary judgment is warranted. Exactly correct. Okay. I wanted to just hit a few points briefly. The first is to confirm, Judge Graber, that you are correct. This appeal is about that third or that middle category. The overlap category. The overlap category. Okay, so you're not challenging the orders of discovery for uniquely United States documents. That's correct. Such as the repair records and blah, blah, blah. That's correct. That's not a question in front of us. That's correct. The question to this panel is if the identical document exists in the jurisdiction of the Dutch court and here in the U.S. And no case before this case has ordered production of identical copies in the U.S. This would be a dramatic expansion of 1782. Counsel just pointed to the Akiba case. The Akiba case is specifically different on this point. In Akiba, the finding was the tribunals abroad were the European Patent Office and the Japanese Patent Office. And the specific finding in Akiba, and this is from page 1110, neither office has established procedures through which Akiba may seek discovery of potentially relevant information located in the United States for use in those foreign proceedings. So in Akiba, there was not, the foreign tribunals had no ability to order the discovery. And therefore, Akiba is irrelevant here. The more relevant case is Kestrel, which is a Seventh Circuit case. In Kestrel, there were two categories of documents. Documents that were unique to the United States. And then the second was the overlap category. And this is Kestrel at page 406 addressing the overlap category. So the question is, quote, joy may have originals or copies of some responsive documents, so we must consider the possibility of remanding with instruction to determine what responsive documents, if any, joy possesses in the United States. So the question was, do we need to remand to see what to do with the documents where they're the same in both jurisdictions? That's the same question we have here. And what the Seventh Circuit says is, such an exercise would not be productive, however, because it would have been an abuse of discretion for the district court to order their production. If this panel goes with Nikon's argument, there will be a split between the Ninth Circuit and the Seventh Circuit, and we would submit also between the Second Circuit, which decided the same issue the same way in the Smith's decision. Thank you, counsel. Thank you. The two cases just argued are submitted, and I want to thank both counsel for extremely helpful arguments in this interesting pair of issues. And with that, we stand adjourned for today's session.
judges: Graber, N.R. Smith, Simon